IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HOWARD GIMBEL, MARVIN DAVIS, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Case No. 08-CV-4319 |
| ) | |
| UBS FINANCIAL SERVICES, INC., ) | Judge Zagal |
| F/K/A UBS PAINEWEBBER, INC. and ) | Mag. Judge Nolan |
| CHARLES NICKY BANK, ) | |
| ) | |
| Respondents. ) | |

## MOTION TO REMAND

Petitioners, Howard Gimbel and Marvin Davis, move to remand their case to the Circuit Court of Cook County, Illinois. In support of this motion, Petitioners state as follows:

I.   Removal is Not Warranted.

The propriety of removal depends on whether the suit, as plaintiff framed or easily could have framed it in the complaint, would have been within the court's jurisdiction at the time of removal. Katonah v. USAir, Inc., 868 F. Supp. 1031, 1033 (N.D. Ill. 1994). Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum. Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993). The party seeking removal has the burden of establishing federal jurisdiction. Id. Any doubt regarding jurisdiction should be resolved in favor of the states (i.e., remand). Id. Alternatively stated, "questions on removal are … strictly construed against federal jurisdiction." Katonah, 868 F. Supp. at 1033. As explained below, there is no basis for removal of Petitioners' state claims to federal court. Neither of the claims were created by federal law nor do plaintiffs' claims necessarily depend on

1

"resolution of a substantial question of federal law." Franchise Tax Bd. V. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983).

II.     This Court Does Not Have Jurisdiction Over Petitioners' Claims.

Here, Respondents argue that Petitioners' claim arises under federal law because their fraud in the inducement claim is based on UBS's and Bank's violation of the federal securities law to preserve documents. (See, Notice of Removal at ¶ 2.) In that regard, UBS contends that "Petitioners' claims explicitly rely on an alleged violation of Section 17(a) of the Securities Exchange Act of 1934 and the rules promulgated thereunder, which require broker-dealers to preserve certain records related to their accounts." (Notice of Removal at ¶ 3.)

UBS is wrong. There is no "substantial question of federal law" in dispute between the parties. In that regard, Petitioners allege that "UBS failed to disclose to Petitioners that they engaged in the practice, in violation of the SEC rules and in breach of its duty to Petitioners, of failing to preserve documents relating to their accounts which would likely help Petitioners prove their claims and disprove UBS's defenses in the event of arbitration." (Petition to Vacate at ¶ 44.) Petitioners did not ask the court to determine whether UBS violated the SEC rules. Indeed, the federal agency responsible for enforcing the Exchange Act and the Rules promulgated thereunder had already resolved this federal question. To that end, the Securities Exchange Commission ("SEC") entered a cease and desist order against UBS finding that UBS "willfully violated Section 17(a)(1) of the Exchange Act and Rule 17a-4 promulgated thereunder by failing to preserve electronic mail communications related to its 'business as such' for three years, the first two of which in an easily accessible place." (See, Copy of SEC Order attached hereto as Exhibit A.)

Respondents should not have removed this action because Petitioners could not have brought their claims in federal court originally as a civil action arising under the Constitution, laws or treatises of the United States. The state law claims of fraud and fraud in the inducement do not necessarily raise a federal issue. Petitioners do not seek to prove that Respondents violated the Exchange Act or SEC rules as the SEC has already and indisputably resolved that issue.[1] Reference to the cease and desist order entered by the SEC against UBS is a fact that supports Petitioners' fraudulent inducement action – the cease and desist order should have been disclosed to Petitioners and UBS's failure to disclose that it was censored by the SEC for violating record preservation regulations is the fraud of which Petitioners complain.

Gobble v. Hellman, 2002 WL 3440286 (N.D. Ohio 2002), is of no help to UBS. In Gobble, the plaintiff asserted six causes of action for breach of fiduciary duty, two claims for waste of corporate assets and one claim for abuse of control. 2002 WL 3440286 at *1. In stating these claims, the plaintiff alleged that the defendants failed to abide by federal securities rules and regulations and violated their duties under the Federal Exchange Act. Id. at *3. In Gobble, resolution of plaintiff's claims required a construction and adjudication of substantial questions of federal law, and federal court jurisdiction was proper. Id. In Gobble, the SEC had not already determined that defendants violated SEC rules and regulations.

Unlike Gobble, the SEC has already determined that Respondents in the instant case failed to maintain adequate systems and procedures to ensure the preservation of electronic mail communications and willfully violated the record-keeping requirements of Section 17(a)(1) of the Exchange Act and SEC Rule 17a-4. (See, Exhibit A.) Thus,

---

[1] In fact, UBS consented to the entry of the Order. (See, Exhibit A at p. 1.)

federal jurisdiction is not proper because the Illinois courts will <u>not</u> be determining whether Respondents violated the Exchange Act or the rules thereunder. The Illinois courts will determine whether failure to disclose the already-determined violation constitutes fraud under Illinois common law. Allegations of UBS's violation of the Exchange Act and rules simply provide a factual basis for their fraudulent inducement claim and is thus not sufficient to create a substantial question of federal law or to confer jurisdiction to the federal courts. <u>See</u>, <u>Gobble</u>, 2002 WL 34430286 at *3, FN1 ("Allegations that simply provide a factual basis for a claim and which could independently support either a state law claim or a federal law claim are generally not sufficient to create a substantial question of federal law or to confer jurisdiction to the federal courts.")

III.　　<u>Conclusion</u>.

Petitioners respectfully request this Court to grant their motion to remand this case back to the Circuit Court of Cook County for lack of federal jurisdiction.

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　HOWARD GIMBEL and MARVIN DAVIS


　　　　　　　　　　　　By:　　 /s/ Edward T. Joyce
　　　　　　　　　　　　　　　　One of their attorneys.

Edward T. Joyce
EDWARD T. JOYCE & ASSOCIATES, P.C.
11 South LaSalle Street
Suite 1600
Chicago, IL 60603
(312) 641-2600
Atty. I.D. 32513

William J. Harte
WILLIAM J. HARTE LTD.
111 West Washington Street
Suite 1100

Chicago, IL 60602
(312) 726-5015

# UNITED STATES OF AMERICA
# BEFORE THE
# SECURITIES AND EXCHANGE COMMISSION

**Securities Exchange Act of 1934**
**Release No. 52022 / July 13, 2005**

**Administrative Proceeding File No. 3-11980**

| | |
|---|---|
| **In the Matter of** | ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER PURSUANT TO SECTION 15(b) AND SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934 |
| UBS SECURITIES LLC (f/k/a UBS WARBURG LLC), | |
| **Respondent.** | |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative proceedings pursuant to Section 15(b)(4) and Section 21C of the Securities Exchange Act of 1934 ("Exchange Act") be, and hereby are, instituted against UBS Securities LLC ("Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement ("Offer") to the Commission, which the Commission has determined to accept. Solely for the purpose of these proceedings, and any other proceedings brought by or on behalf of the Commission or to which the Commission is a party, Respondent, without admitting or denying the findings herein, except as to the Commission's jurisdiction over it and over the subject matter of these proceedings, consents to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order Pursuant to Section 15(b) and Section 21C of the Securities Exchange Act of 1934 ("Order").

**III.**

On the basis of this Order and Respondent's Offer, the Commission finds that:

**A.   RESPONDENT**

UBS Securities LLC, formerly known as UBS Warburg LLC, is a Delaware corporation with its principal place of business in New York, New York.  Respondent is a broker-dealer registered with the Commission pursuant to Section 15(b) of the Exchange Act and is a member of the New York Stock Exchange, Inc. ("NYSE") and NASD, Inc. ("NASD").  The firm engages in a nationwide securities business.  During the review period, Respondent provided equity research, sales, trading services, merger and acquisition advisory services, private banking services, and underwriting services.

During the relevant period, Respondent and its predecessor entities engaged in both research and investment banking activities.  In 2000, UBS AG (the parent company of UBS Securities) purchased PaineWebber Inc., which subsequently became known as UBS Financial Services, Inc.  As part of the merger, PaineWebber banking and research activities were shifted to UBS Securities, and some investment bankers and research analysts previously employed by PaineWebber became employees of UBS Securities.  Since the merger, PaineWebber is principally engaged in the business of servicing retail investors and no longer employs equity investment bankers or research analysts.

For purposes of this Order, UBS Securities, PaineWebber, and their predecessor entities will be referred to collectively as "UBS."

**B.   SUMMARY**

This action concerns UBS's violations of the record-keeping requirements of Section 17(a)(1) of the Exchange Act and Rule 17a-4 thereunder during the period of July 1, 1999 to June 30, 2002 (the "relevant period").  During all or part of the relevant period, UBS failed to preserve for three years, the first two of which in an easily accessible place, all electronic mail communications (including inter-office memoranda and communications) received and sent by its employees that related to its business as a member of an exchange, broker or dealer.  UBS lacked adequate systems or procedures to ensure the preservation of electronic mail communications.  The Commission, NYSE, and NASD (collectively, "the regulators") discovered these deficiencies during inquires into the supervision of UBS's research and investment banking activities.

**C.     FACTS**

In April 2002, the regulators commenced an inquiry into the research and investment banking activities of UBS and other broker-dealers during the period July 1, 1999 to June 30, 2001 (the "Phase I inquiry"). During this time, employees of UBS used electronic communications to conduct business for UBS as a broker-dealer and member of an exchange.

Pursuant to the Phase I inquiry, the regulators made multiple requests to UBS for electronic mail ("e-mail") of research analysts and investment bankers. Respondent produced e-mail in response to these requests and subsequently indicated that while it had endeavored to provide all e-mail responsive to the regulators' requests, it was not able to locate restorable back-up tape for the entire time period for every person whose e-mail had been requested. The communications and other information contained in the produced e-mail provided evidence that, among other things, UBS engaged in acts and practices that imposed conflicts of interest on research analysts.

In April 2003, the regulators initiated and settled joint enforcement actions against UBS and other broker-dealers subject to the Phase I inquiry for various violations involving their research and investment banking activities. *See SEC v. UBS Warburg LLC,* Litigation Release No. 18112 (April 28, 2003); *UBS Warburg LLC,* Hearing Panel Decision 03-070 (April 22, 2003); and *UBS Warburg LLC,* NASD Letter of Acceptance Waiver and Consent No. CAF030022 (April 24, 2003).

In May 2003, the regulators commenced an inquiry into the supervision of the research and investment banking activities of UBS and other broker-dealers during the period of July 1, 1999 to June 30, 2002 (the "Phase II inquiry"). Pursuant to the Phase II inquiry, the regulators requested that UBS produce e-mail for various supervisory personnel and other employees. UBS produced certain e-mail in response to these requests.

In August 2003, in response to inquiries by the regulators, UBS stated that it had not been able to retain, locate and/or restore all e-mail for certain individuals. The regulators then requested that UBS provide detailed information on its ability to locate and restore backup tapes containing e-mail responsive to the regulators' requests during the Phase I and Phase II inquiries. In a series of responses, UBS admitted that it had failed to retain, locate, and/or restore all responsive e-mail requested during those inquiries and provided a detailed explanation of the circumstances leading to that failure.

UBS identified the following reasons for its failure to retain, locate, and/or restore all responsive e-mail: certain backup tapes containing responsive e-mail of UBS employees could not be located; certain backup tapes containing responsive e-mail were located but did not contain e-mail, although a log had been generated indicating that the e-mail had been successfully backed-up; e-mail on certain backup tapes was corrupted and unreadable; certain backup tapes were re-cycled in violation of UBS's policies, so that the responsive e-mails had been taped over; certain tapes were mislabeled; and certain backup tapes from servers that had

been located at PaineWebber facilities prior to the November 2000 merger of PaineWebber and UBS AG were never found.

During the relevant period, UBS had systems and procedures requiring the retention of certain electronic communications. However, those systems and procedures were inadequate to ensure that all electronic communications relating to UBS's business were preserved for three years and for the first two years in an easily accessible place.

**D.     LEGAL DISCUSSION**

Section 17(a)(1) of the Exchange Act provides that each member of a national securities exchange, broker or dealer "shall make and keep for prescribed periods such records, furnish copies thereof, and make and disseminate such reports as the Commission, by rule, prescribes as necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this title."

The Commission has emphasized the importance of the records required by the rules as "the basic source documents" of a broker-dealer. *Statement Regarding the Maintenance of Current Books and Records by Brokers and Dealers*, 4 SEC Docket 195 (April 26, 1974). The record-keeping rules are a "keystone of the surveillance of brokers and dealers by [Commission] staff and by the securities industry's self-regulatory bodies." *Edward J. Mawod & Co.,* 46 S.E.C. 865, 873 n. 39 (1977) (citation omitted), *aff'd,* 591 F.2d 588 (10th Cir. 1979).

Pursuant to its authority under Section 17(a)(1), the Commission promulgated Rule 17a-4. Rule 17a-4(b)(4) requires UBS to "preserve for a period of not less than three years, the first two years in an easily accessible place … [o]riginals of all communications received and copies of all communications sent … by the member, broker or dealer (including inter-office memoranda and communications) relating to [the firm's] business as such[.]" Rule 17a-4 is not by its terms limited to physical documents. The Commission has stated that internal electronic communications fall within the purview of Rule 17a-4 and that for purposes of Rule 17a-4, "the content of the electronic communication is determinative" as to whether that communication is required to be retained and accessible. *In the Matter of Deutsche Bank Securities, Inc., et al.,* Rel. No. 34-46937 (Dec. 3, 2002) (*citing Reporting Requirements for Brokers or Dealers under the Securities Exchange Act of 1934,* Rel. No. 34-38245 (Feb. 5, 1997)); *see also In re Janney Montgomery Scott LLC*, Rel. No. 34-50252 (Aug. 25, 2004); *In the Matter of Robertson Stephens, Inc.*, Rel. No. 34-47144 (Jan. 9, 2003).

Based on the foregoing and Respondent's Offer of Settlement, the Commission finds that Respondent willfully violated Section 17(a)(1) of the Exchange Act and Rule 17a-4 promulgated

thereunder by failing to preserve electronic mail communications related to its "business as such" for three years, the first two of which in an easily accessible place.[1]

### IV.

### UNDERTAKINGS

A. Respondent undertakes and agrees to pay penalties and fines totaling $2.1 million to resolve this proceeding and related actions by NYSE and NASD. In addition to the $700,000 civil penalty Respondent shall pay to the U.S. Treasury pursuant to this Order, Respondent undertakes and agrees to pay fines in the amount of $700,000 to NYSE and $700,000 to NASD.

B. Respondent undertakes to review its procedures regarding the preservation of electronic communications for compliance with the federal securities laws and regulations, and the rules of NYSE and NASD. Within ninety (90) days of the issuance of this Order, unless otherwise extended by the staff of the Commission for good cause shown, Respondent undertakes and agrees to inform the Commission in writing that it has completed its review and that it has established systems and procedures reasonably designed to achieve compliance with those laws, regulations, and rules concerning the preservation of electronic mail communications, including, but not limited to, all electronic communications that are sent and/or received through any platform or background IT application.

### V.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions specified in Respondent's Offer.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

A. Respondent cease and desist from committing or causing any violations and any future violations of Section 17(a)(1) of the Exchange Act and Rule 17a-4 promulgated thereunder, pursuant to Section 21C of the Exchange Act;

B. Respondent is censured pursuant to Section 15(b)(4) of the Exchange Act;

C. Pursuant to Section 15(b)(4) and Section 21B of the Exchange Act, Respondent shall pay $700,000 to the U.S. Treasury as a civil penalty within ten (10) days after the entry of the Order. The payment shall be: (A) made by United States postal money order, certified check, bank cashier's check, or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General

---

[1] "Willfully" as used in this Order means intentionally committing the act which constitutes the violation. *See Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir. 2000); *Tager v. SEC*, 344 F.2d 5, 8 (2d Cir. 1965). There is no requirement that the actor also be aware that he is violating one of the Rules or Acts.

Green Way, Stop 0-3, Alexandria, VA 22312; and (D) submitted under cover of a letter that identifies the payor as Respondent in these proceedings and the file number of these proceedings. A copy of the cover letter and money order or check shall be sent to Antonia Chion, Associate Director, Division of Enforcement, Securities and Exchange Commission, 100 F Street, N.E., Washington, D.C. 20549; and

D. Respondent shall comply with the undertaking contained in Section IV.B above;

By the Commission.

                                                     Jonathan G. Katz
                                                     Secretary